UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GLENN F.,[1]

                           Plaintiff,              DECISION AND ORDER

-vs-

                                                     1:20-CV-0353 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Nov. 27, 2020, ECF No. 14; Def.'s Mot., Jan. 26, 2021, ECF No. 15. Plaintiff argues that the ALJ's RFC finding is unsupported by substantial evidence because it is unclear how the specific limitations in his RFC determination were formulated. Pl. Mem. of Law, 9–12, Nov. 27, 2021, ECF No. 14-1. The Commissioner disputes Plaintiff's contentions.

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 14] is denied, the Commissioner's motion [ECF No. 15] is granted, and the Clerk of Court is respectfully directed to close the case.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

## LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff protectively filed his DIB application on August 27, 2014, alleging a disability onset date that was later amended to April 2013. Transcript ("Tr."), 35, 152, Sept. 28, 2020, ECF No. 13. There was apparently a mistake of some sort on the part of the Commissioner in the processing of Plaintiff's application, and Plaintiff's counsel had to file a request to re-open the case in May 2017. Tr. 35, 86. In his updated disability report from July 20, 2017, Plaintiff alleged that his ability to work was limited by disc fusions in his upper back, no disc in his lower back, "left arm reattach," rods and screws in his left leg, and nerve damage to the right side of his abdomen. Tr. 171. On August 23, 2017, the Commissioner notified Plaintiff of the determination that Plaintiff was not disabled, and that he did not qualify for DIB benefits. Tr. 93. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 101.

Plaintiff's request was approved, and Plaintiff appeared with his counsel for a hearing in Buffalo, New York, with an impartial vocational expert also joining by phone. Tr. 33. At the hearing, Plaintiff's attorney summarized Plaintiff's disabling conditions:

> Your honor, he's got multiple impairments. Back in 2005 he had a serious tibia/fibula fracture. He also injured his back, resulting in sacralization of five of the vertebra, which became more complicated when he had two work-related incidents in 2010, and his surgeon, Dr. Capicotto wanted to do multi-level fusion with putting rods in . . . . and my client has elected not to do that and has tried to manage his pain through pain management through the years. He also . . . had a serious injury to his left shoulder and had surgeries on his left shoulder, and he also had nerve damage . . . [in] his right abdomen. So, it's a combination of these multiple orthopedic impairments,

which prevent him from doing the full range of sedentary work. Tr. 34–35.

During the course of the hearing, Plaintiff testified that he was in a serious motorcycle accident in 2005 in which "I broke my leg in three spots . . . . punctured my lungs . . . fractured my back in five spots . . . . tore my arm off," and suffered nerve damage to his abdomen such that "it doesn't hold my guts in . . . ." Tr. 52. In 2010, Plaintiff was involved in an accident at work "that really screwed up my lower back bad . . . ." Tr. 43. As a result of his accidents, Plaintiff gets stabbing pain in his left arm and can only lift it a "little under" shoulder level (Tr. 53–54), has constant pain in his lower left leg where rods and screws had been surgically inserted (Tr. 54), has pain and spasms in his lower back (Tr. 56), has no movement in his "upper back" because the vertebrae are fused together (Tr. 62), and has "a whole bunch of nerve damage here on the right side of me" (Tr. 64).

Because of these limitations, Plaintiff stated that his 15-year old son maintains his home because Plaintiff can't do it himself (Tr. 37), that Plaintiff has to lie in bed for about half the day on a "good" pain day and all day on a bad pain day (Tr. 57–58), that he has to wear a brace all day each day to support his back and abdomen (Tr. 67–68), that he can only sit for 10 to 20 minutes before he has to stand up or lie down (Tr. 60), that he can only stand for 10 to 20 minutes before he has to sit or lie down (Tr. 60), and can only walk a half block or block before he has to stop (Tr. 60). He stated his girlfriend does the laundry and cooking (Tr. 59), he cannot put on his own shoes and socks (Tr. 68), he can only pick something up from the floor "if I absolutely had to" (Tr. 68), and he can only pick up his three-year-old son – who weighs approximately 30 pounds – if his son first climbs up on the couch (Tr. 68–69). However, Plaintiff also stated that he is able to climb into his

4

F-250 truck using the running board (Tr. 64), drives his kids to school at 8:30 in the morning and picks them up at 3:15 in the afternoon (Tr. 65), drives to his own medical appointments (Tr. 39), drives his wife to the grocery store once or twice a month (Tr. 40), and socializes with friends when they stop by, which in some cases is once or twice a week (Tr. 66).

On January 25, 2019, the ALJ denied Plaintiff's claim for DIB benefits. Tr. 26. In his decision, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2016. Tr. 17. At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date of April 30, 2013. Tr. 17. At step two, the ALJ determined that Plaintiff has several severe impairments: left proximal humerus fracture, status post open reduction and internal fixation surgery; left tibial fracture, stat post open reduction and internal fixation surgery; and degenerative disc disease of the lower back. Tr. 17. The ALJ also noted that there was objective evidence in the medical record of abdominal impairments which the ALJ found to be non-severe because they failed to meet the durational requirement. Tr. 18. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. In particular, the ALJ found that Plaintiff's physical examinations do not demonstrate compromise of a nerve root or the spinal cord, limitation of the motion of the spine, or motor loss accompanied by sensory or reflex loss. Tr. 18.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[2] ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with the following limitations:

> [H]e could lift, carry, push, and/or pull up to 10 pounds. The claimant could frequently sit and occasionally stand and/or walk. He could not climb or kneel, but he could frequently handle and finger. He could frequently reach as well. The claimant could occasionally drive, but he could not operate machinery and had to avoid extreme heat, extreme cold, wetness, or humidity. He could not work at shoulder level or higher with his left, non-dominant arm. The claimant could occasionally bend and stoop. He had to [sic] alternate between sitting and standing at will, but he could perform his job tasks in both postures.

Tr. 19. Based on this RFC, at step four the ALJ found that Plaintiff is unable to perform his past relevant work, which was a composite job involving work both as a truck supervisor and a material handler. Tr. 25. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the impartial VE, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a telephone survey worker, surveillance system monitor, and a semi-conductor bonder. Tr. 26. Hence, the ALJ concluded that Plaintiff *is not* disabled. Tr. 26.

On January 24, 2020, the Commissioner's Appeals Council denied Plaintiff's request to review the ALJ's decision. The ALJ's decision thus became the "final decision" of the Commissioner.

---

[2] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

DISCUSSION

In the present case, Plaintiff raises a single argument for review by the Court. Plaintiff maintains that the ALJ's RFC finding is unsupported by substantial evidence because it is unclear how the specific limitations in the RFC were formulated, particularly the option to sit or stand at will. Pl. Mem. of Law at 9. The Commissioner counterargues that the ALJ's RFC finding regarding the sit/stand option was supported by substantial evidence, namely, the testimony of the vocational expert, Plaintiff's testimony, and the medical records of Plaintiff's former pain management physician. Def. Mem. of Law, 6–7, Jan. 26, 2021, ECF No. 15-1. The Court agrees with the Commissioner that the ALJ's RFC finding was supported by substantial evidence.

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012).

Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a

7

finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Consequently, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

An ALJ's RFC determination need not perfectly correspond with any of the medical opinions in the record, provided he has weighed all of the evidence available to make an RFC finding that was consistent with the record as a whole. *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). Here, the ALJ's RFC findings did not "perfectly correspond" with any of the medical opinions in the record, particularly with respect to the finding that Plaintiff must be able to "alternate between sitting and standing at will." Nevertheless, the ALJ rooted his RFC in those portions of the opinion offered by Plaintiff's treating pain management specialist, Dr. Eugene Gosy, that the ALJ found to be consistent with other medical evidence in the record. Tr. 23–24.

Specifically, the ALJ found support in the record for Dr. Gosy's opinion that Plaintiff was capable of sedentary work, occasionally lifting/carrying and pushing/pulling up to 10 pounds, frequently sitting, occasionally standing and walking, with frequent grasping, manipulation, reaching overhead and below shoulder level, and occasionally driving a vehicle. Tr. 23 (referencing Dr. Gosy's opinion at Tr. 282–283). The ALJ found Dr. Grosy's opinion to be consistent with the opinion of Dr. Christopher Grammar, a Worker's

Compensation independent examiner (Tr. 355–360), and with Plaintiff's overall course of treatment for his back injury, which consisted of pain management rather than surgical intervention (*see, e.g.,* Tr. 559, for notes from Plaintiff's primary care provider in 2018 that Plaintiff "still doesn't want to return to [a] surgeon").

Because the record contained sufficient evidence from which the ALJ could assess Plaintiff's RFC, the RFC did not need to perfectly correspond with any one particular medical opinion. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (rejecting a claimant's argument that an ALJ's RFC was not supported by substantial evidence where there was no medical opinion in the record providing the specific restrictions reflected in the ALJ's RFC). Accordingly, the Court finds that Plaintiff's challenge to the Commissioner's decision is without merit.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 14] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 15] is granted. The Clerk is directed to close this case.

DATED:    September 1, 2021
          Rochester, New York

    /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge